BURKE *v.* STATE OF INDIANA.

[No. 867S62. Filed June 24, 1968.]

*Work & Kimbrough,* of Gary, for appellant.

*John J. Dillon,* Attorney General, and *Dennis J. Dewey,* Deputy Attorney General, for appellee.

JACKSON, J.—Appellant was charged by affidavit with the crime of rape, waived arraignment and trial by jury and entered a plea of not guilty. At the conclusion of the State's evidence appellant moved for a directed verdict. The court

reserved ruling on the motion. Appellant submitted evidence. The State submitted additional evidence, and both parties rested. Arguments were heard on appellant's motion for directed verdict and on the evidence presented. Thereafter the court found appellant guilty as charged. From such finding and judgment thereon stems this appeal.

The affidavit, in pertinent part, reads as follows:

". . . on or about the 8th day of October, A.D. 1965, at and in the County of LAKE, and State of Indiana, SAMUEL BURKE did then and there unlawfully touch one JEAN DEAR, a woman, in a rude and insolent manner, and her, the said JEAN DEAR, he, the said SAMUEL BURKE, did then and there unlawfully, feloniously, forcibly and against her will ravish and carnally know, then and there being contrary to the form of the statute in such case made and provided, and against the peace and dignity of the State of Indiana."

The finding and judgment of the court, in pertinent part, reads as follows:

"And the Court, having heard the evidence and being now fully advised in the premises, finds that the defendant is guilty as charged and that he is thirty seven years of age; that he be sentenced to be committed to the custody and control of the Warden of the Indiana State Prison for a period of not less than two nor more than twenty-one years from this date and that he pay the costs of this prosecution.

It is therefore considered, adjudged and decreed by the Court that the defendant, Samuel Burke, for the offense by him committed to-wit: Rape, be and he is hereby committed to the custody and control of the Warden of the Indiana State Prison for a period of not less than two nor more than twenty one years from this date and pay the costs of this prosecution.

And the Sheriff of this County is charged with the due execution of this judgment.

It is further ordered by the Court that the commitment herein be withheld pending the submission and consideration of the report of the pre-commitment investigation."

Appellant's Motion For New Trial, omitting heading and formal parts, reads in pertinent part as follows:

"1. That the findings and judgment of the Court are not sustained by sufficient evidence as shown by copy of transcript of testimony filed within and incorporated by reference.

2. That the findings and judgment of the Court are contrary to law.

3. That the Court in its preliminary interrogation of the defendant, Jean Dear, (sic) failed to appraise said defendant of the penalties involved in connection with the charge of rape. That the court neglected to appraise Defendant of all the constitutional rights that are his by virtue of the Constitution of the United States of America and by virtue of the Constitution of the State of Indiana.

4. That the Court erred in overruling Defendant's motion for a finding which said motion was duly made at the conclusion of the evidence presented by the State in its case in chief, wherein defendant contended that the State had failed to prove each and every allegation contained and alleged in the Affidavit in the State's case.

5. That the Court erred in overruling its objection to certain testimony of the complaining witness wherein the said complaining witness testified in rebuttal to the fact that she was commonly known as Jean Dear, more specifically as follows:

Q. What, in fact, is your true name?
By Mr. Work: I object! This is impeaching testimony. Witness testified that her true and correct name is Jean Williams. By this you impeach her credibility. She said her true name is Jean Williams.
By the Court: She may answer.

6. That the Court erred in overruling Defendant's objection to the following question, to-wit:

Q. What was your physical condition on October 8th, 1965?
By Mr. Work: Objection! That calls for a medical conclusion and this witness is unable to state . . .
By the Court: As a layman, she could testify as to her own physical condition, I think the question is proper.

7. That the Court erred in sustaining the prosecutor's objection to the following question:

Q. When you were living with L. C. Williams, a known pander, and with Anna Sue Watkins, whose (sic) a known prostitute, and you were associating with her . . .

A. I was not associating with her, I said I knew her!

By Mr. Stanton: I object, your Honor!

By the Court: Sustained.

for the reasons that the objection and the Court's ruling prevented Defendant from even fully stating the question asked of the witness, and for the further reason that said objection did not set forth any basis for the same.

8. That the Court erred in overruling Defendant's objection to the following evidence. The following question, objection, ruling of the Court and answer were given:

By Mr. Stanton: Your Honor, I move again for the admission of State's Exhibit No. 1.

By Mr. Work: May I take this witness on voir dire?

By the Court: Yes, you may.

Q. At the time you gave this gun to Mr. Redina, you unloaded it and gave it to the Property Clerk?

A. Yes, sir.

Q. Who was the Property Clerk?

A. I don't recall.

Q. Now, you turned it over to an unnamed Property Clerk that you don't know, is that right?

A. That's right.

Q. I think you just testified who the Property Clerk was, that you gave it to, you didn't recall?

A. Do you want me to confirm it?

Q. You don't know the name?

A. I don't remember who it was. As a matter of procedure, the Property Clerk takes it in his possession and locks it up.

Q. Is that true, that the only person in charge that has access to this vault is the Property Clerk?

A. At this time, that's true.

Q. You don't know what happened to this evidence from the day you gave it to the Property Clerk until this date here?

A. That's right.

Q. You don't know who gave it to you?

A. Mr. Irwin.

Q. It was sealed and in a manila envelope?

A. Yes, sir.

Q. And you don't know who had it or where it was then?

A. No.

Q. Your Honor, we renew our objection of its inadmissibility.

By Mr. Stanton: Your Honor, this is the same weapon that was used in the crime, same possession.

By the Court: Overruled, the objection. State's Exhibit No. 1 may be admitted into evidence.

9. The Court erred in overruling Defendant's objection to the admission of evidence, wherein the following offer, objection and ruling of the Court was had:

By Mr. Stanton:

Q. Officer, I'm going to show you what's been marked for the purpose of identification, State's Exhibit No. 2, and ask you if you have seen this before.

A. Yes, sir.

Q. Where did you see that before?

A. This was given to me by Miss Dear, who at the time stated . . .

By Mr. Work: I'm objecting, Your Honor! You can't tell what she states.

By the Court: That's right, you can't say what she stated to you.

By Mr. Stanton: When did she give that to you?

A. At the time we were investigating the case, October 9th, 1965.

Q. It would be there approximately on that date?

A. Yes sir.

Q. What did you do with it?

A. We put it in a mailer made especially for sending evidence and sent it to the State Police Laboratory downstate, and then asked for analysis, anything they may find, and we asked specifically about semen stains.

Q. Did you put that in a sealed envelope?

A. Well, this is a mailing tub (sic) that we mail and seal and it goes there and comes back from the State Police Lab.

Q. It came back?

A. Yes.

Q. How did it come back to you?

A. In the same type of container.

Q. Did you open it?

A. Yes.

A. I took it all, with the analysis, to the Prosecuting Attorney's Office at the time we got it back.

Q. Did it come back in this envelope, Officer?

A. Yes, sir.

Q. As far as you know, it's been with the Prosecuting Attorney's Office since that time?

A. Yes Sir.

By Mr. Work: We'll agree to that, as I understand, my agreement was that I would agree to stipulation that Sergeant Keith Young from the Indiana State Police Laboratory examined a scarf and as a result of this examination, certain findings were made. Whatever they are, I'll stipulate to I.D. and reserve the right on continuity, what Mr. Keith Young's testimony was; and that I'll stipulate subsequent to their showing the chain.

The Court: The objection to the stipulation as to the State brings this man from Indianapolis, anything he testifies to, Mr. Work would be willing to stipulate.

By Mr. Stanton: Your Honor, my understanding is that Sergeant Young would testify and he would testify that he received in a sealed position and received this in a sealed position, and the results of it was a male semen and placed it in a sealed container and mailed it back to Mr. Hilton.

By the Court: It may be so stipulated, gentlemen.
By Mr. Work: Yes, sir.

By Mr. Stanton: I'll offer this into evidence as State's Exhibit No. 2.

By Mr. Work: Your Honor, I'd like to object to State's Exhibit No. 2, upon the fact that at this point, there is absolutely no showing of continuity that this was received by Sergeant Hilton up to date. I don't know where it's been and how it's been tampered with up to this point, and it is our suggestion to the Court, until such time that the State has sufficiently shown its chain of continuity . . .

By the Court: It seems to the Court that the witness, Officer Hilton, had testified that he received this exhibit from the complaining witness and placed it in a mailer and sent it to Indianapolis, and it's stipulated that it's been received down there and examined and that he received it back and he then brought it to the Prosecuting Attorney's Office, and it is now being offered by the representative of the Prosecuting Attorney's Office. It is your objection that ... (This is off the record)

The Court: It's been stipulated that this exhibit showed a male spermatozoa.

By Mr. Work: The question is whether this is the same scarf.

By the Court: Objection overruled. It may be received in evidence.

By Mr. Stanton: I have no further questions.

10. The Court erred in overruling Defendant's objection to the following question wherein the following question, objection and ruling of the Court and answer were given.

Q. In what way had you used that name?

By Mr. Work: If it pleases the Court, I'm going to move all of this be stricken. It's not a rebuttal question and at this time I move that all be stricken!

By Mr. Stanton: The defendant said on his testimony that the only time he knew her is when she was married to L. C. Williams.

By Mr. Work: If this is rebuttal, I'll eat my hat!

By the Court: Overruled! The Court will permit it to go in and give it such weight.

By Mr. Work: There's some very serious questions in regard to the motion, the Court took under advisement by attempting to show facts, and it works hardship on this defendant.

By the Court: As I recall, the question was not raised until the conclusion and there was some, I guess, annuity by the complaining witness; and they have a right to rebuttal any testimony that the defendant gave.

WHEREFORE: Defendant prays that he be granted a motion for New Trial."

Thereafter, on April 18, 1967, appellant's Motion for New Trial was overruled by the court. The Probation Department

of the court thereupon submitted its pre-commitment investigation report. The same was examined and approved by the court. There was no showing appellant or his counsel, or either were present at such time or place.

Appellant's Assignment of Errors is the single specification that,

"1. The Court erred in overruling Appellant's Motion for New Trial."

The evidence most favorable to the State may be summarized as follows. The complaining witness testified her name was Jean Williams Dear. She was living with, but not married to, Nathaniel Dear. She was the same Jean Dear who appeared as the person raped in the affidavit. On October 8, 1965, she saw the appellant at Jack's Liquor Store at 15th and Adams in Gary, Indiana. After some conversation about a mutual friend, the appellant and the complaining witness went to 21st and Adams ostensibly to see the friend, but the address turned out to be appellant's abode rather than the friend's home. The appellant indicated he desired to have sexual relations with the complaining witness, but she told him she could not because she was sick. She had already told him she was recovering from an operation. The appellant then hit her in the mouth, picked up a gun and pointed it at her. He disrobed her. She cried and begged him to leave her alone. While appellant still had the gun in his hand, he threw her on the bed and forced her to commit acts of fellatio and submit to cunnilingus. He then forced her to take twenty-five dollars and forced her to have sexual intercourse with him. After appellant was through with her he called a cab for her. She took the cab to the Gary Police Station where she made a complaint against appellant. She turned the money over to the police. She was then taken to the hospital and examined by her doctor. At the trial the complaining witness identified State's Exhibit No. 1 as the gun with which appellant had threatened her. She identified State's Exhibit No. 2 as the scarf which she wore the night of the crime.

Carl D. Horton, a Gary Police Officer, testified he saw the complaining witness at about 10:00 or 10:15 the evening of October 8, 1965, at the police station. She seemed to be very upset, nervous and scared. Her clothing was disarranged. Tears were coming from her eyes. She seemed to have a residue around her mouth. She turned twenty-five dollars over to him.

James L. Hilton, a Detective Sergeant with the Gary Police Department who investigated the complaint on October 9, 1965, testified that he obtained a warrant for the appellant's arrest. When the police arrested appellant, they searched his apartment and found a loaded pistol on the couch. Hilton identified State's Exhibit No. 1 as the pistol he found in appellant's apartment. He identified State's Exhibit No. 2 as a scarf which the complaining witness had given to him. It was stipulated that the scarf was examined by Sgt. Keith Young of the Indiana State Police Laboratory and that the test results showed male semen.

Dr. Clarence Boone, an Obstetrician and Gynecologist, testified that he saw the complaining witness twice on October 8, 1965. The first time he saw her was about 6:15 p.m. in his office where she had come for a follow up examination after surgery, a hysterectomy, he had performed on her in August, 1965. He advised her to refrain from having intercourse until she saw him again. He saw her again about 11:05 p.m. at Methodist Hospital. At that time she had an abrasion of the lower lip in the left corner. There was a swelling on the exterior portion of the lip in the same area. There was a milky discharge noted in the vestibule. A speculum examination revealed a milky discharge on the vaginal walls and in the posterior portion of the vaginal vault. Slides of the secretions were stained with Corbolfuchsin Stain which revealed spermatozoa present within the smear. Some of the secretion was placed in a saline solution. When examined under the microscope it also revealed spermatozoa present.

The appellant took the stand in his own behalf. He admitted the commission of the acts of sodomy but denied the use of force. He contended the prosecuting witness voluntarily submitted for money, twenty-five dollars. He admitted that he attempted to have intercourse with her, but he claimed he had been unable to accomplish penetration.

Under proposition 1 of his argument he argues grounds 1, 2 and 3 of his Motion for New Trial. We will discuss them in inverse order.

The prosecuting witness testified her name was Jean Williams Dear, that she was not married to Mr. Dear but had lived with him as his wife for 5 or 6 years. She also testified she had known both appellant and his wife since 1959 and became acquainted with him through her former husband L. C. Williams. She further testified she was the same Jean Dear who appeared as the person raped in this affidavit. Under these circumstances the appellant could not have been misled by any variance in the name of the complaining witness. Appellant's testimony on the witness stand by which he asserted the witness voluntarily submitted to him for money and his admission of the acts of sodomy and his admission of attempted acts of sexual intercourse with the complaining witness, would in the opinion of the writer, estop him from claiming a variance in the name or names of the witness. In effect appellant is pleading, in this ground, confession and avoidance and he thereby admits the acts with the complaining witness, whatever her name, but claims the acts are not criminal under the averments of the affidavit on which he was tried as the element of force was lacking.

The grounds cited at 1, 2 and 3 of appellant's motion for a new trial relate primarily to the weight and sufficiency of the evidence and the credibility of the witnesses. These questions are to be determined by the trier of the facts and unless there is a total lack of evidence on an essential element of the crime charged the verdict below will

not be disturbed. *Reid* v. *State* (1967), 249 Ind. 247, 231 N. E. 2d 808; *Davis* v. *State* (1968), 249 Ind. 373, 232 N. E. 2d 867; *Beatty* v. *State* (1963), 244 Ind. 598, 194 N. E. 2d 727; *Wojcik* v. *State* (1965), 246 Ind. 257, 204 N. E. 2d 866.

Appellant's Proposition II as presented in his brief raises no question here as it has been answered as part of the answer to appellant's first proposition. Appellant made no denial of the complaining witness' statement that she had known him since 1959 while married to her former husband, Williams, nor to her testimony that she for 5½ or 6 years lived with Nathaniel Dear as his wife and had been known as Jean Williams Dear. As previously stated his defense of confession and avoidance, *under the circumstances as they exist in this case* estop appellant. In view of the evidence in the record we conclude that neither the State nor the appellant was harmed or helped by the "rebuttal evidence" appellant objected to.

Appellant's Proposition III as presented in his brief relates to the admission in evidence of State's Exhibit No. 1 and State's Exhibit No. 2. The prosecuting witness identified both exhibits, State's 1 and 2, as shown by the following questions and answers:

"Q. Mrs. Dear, I show you what has been marked for the purpose of identification, State's Exhibit No. 1, and I ask you if you had seen this before?

A. Yes.

Q. When? Where?

A. October 8th, 1965, in Samuel Burke's apartment.

Q. Is this the gun you saw him having held on you?

A. Yes.

Q. Mrs. Dear, I'm showing you now what has been marked for the purpose of identification, as State's Exhibit No. 2, and ask you if you can identify this?

A. Yes, that's a scarf I was wearing, . . .

Q. Did you take this scarf with you?

A. Yes, sir.

Q. When you left Samuel Burke's apartment what did you do with it?

A. I gave it to the Police in Gary."

On cross examination the prosecuting witness testified as follows:

"Q. When you say, Mrs. Dear; this is, in fact, the weapon that you observed in Mr. Burke's apartment on October 8th, 1965, you're saying that this appears to you or looks like . . .

A. I'm not an expert on guns, but I believe it was the same gun!

Q. It was a gun, a pistol? What was it, a gun or a pistol?

A. I don't know.

Q. You can't say which, whether it was a gun or a pistol, State's Exhibit No. 1, can you state that fact?

A. No, because he might have had several guns."

The question on cross examination may have confused the witness as to whether State's Exhibit No. 1 was *a gun* or *a pistol* but no where and at no time did the cross examination contradict or impeach the testimony of the prosecuting witness on direct examination that she had seen State's Exhibit No. 1 in appellant's apartment on October 8th, 1965, and that she "saw him having held on you" State's Exhibit No. 1.

State's Exhibit No. 2 came in by stipulation of the parties but was identified by the complaining witness.

We are of the opinion the appellant was not harmed by the admission of State's Exhibits Nos. 1 and 2 or either of them.

The question of force and the willingness or unwillingness, or consent, of the prosecuting witness in submitting to the acts of the appellant is in issue. Lack of consent and force constitute the gravamen of the offense charged. The evidence in the record is that she testified appellant hit her in the mouth with his fist. The medical evidence of the doctor corroborated her testimony relative to the blow. She testified appellant persisted in his intent to have sexual intercourse with her in spite of her pleas to let her

alone, her tears, her information to him that she had recently undergone surgery and her statement to him that her doctor told her not to have intercourse at that time. There was evidence of probative value, in the record, from which the court could have and did believe that appellant's objectives were consummated over the objections and without the consent of the prosecuting witness. Credibility of witnesses and weight of evidence are for the trier of the facts. *Davis* v. *State, supra.*

The fourth and last proposition raised by appellant in his brief is to the testimony of Dr. Boone who examined the prosecuting witness at Methodist Hospital about 11:00 p.m. on October 8, 1965. The basis of the objection is summarized in the heading of appellant's argument under this proposition as follows:

> "Where a witness testified as to his examinations and analysis of a physical object, which said object is in his possession, the same should be offered and admitted into evidence prior to the witness rendering an opinion based upon said examination and analysis."

In support of the above proposition appellant cites *Gay* v. *United States* (1941), 118 Fed. 2d 160 and Warren's (sic) Criminal Evidence Vol. 2, Sec. 693 at page 680. The above cited authority is to the effect that an x-ray plate was the best evidence of what said x-rays revealed and that a physician could not testify as to his interpretation of the plate without its introduction and acceptance into evidence.

We do not find appellant's argument in support of this proposition persuasive. In the first place the witness is the doctor who took the "vaginal wash," who prepared the "saline solution," who made the slides and applied the stain thereto, and who testified as to the presence of the spermatozoa as a result of such activities. The doctor testified as to what he did, what he observed and to the presence of the spermatozoa. This is quite different than "reading an x-ray picture" taken by some one else. Here the doctor was testifying to the results of his own work. Further, in the

opinion of the writer, the objection if such it be, came too late, the objection should have been made when the doctor testified on direct examination and followed by a motion to strike the answer instead of waiting until cross examination. Finally the doctor's testimony relative to spermatozoa, was only cumulative, and would not tend to show whether or not the sexual intercourse was voluntary or involuntary and by force. The appellant admits he attempted intercourse but contends it was voluntary and for money, in view of this fact it is immaterial whether spermatozoa was or was not present in the wash, solution or slides.

We fail to see how the defendant's rights would be prejudiced, in the case at bar, even if the court erred in admitting the doctor's testimony. *Brown* v. *State* (1964), 245 Ind. 604, 201 N. E. 2d 281.

Finding no prejudicial error the judgment below is affirmed.

Lewis, C. J., and Arterburn and Hunter, JJ., concur; Mote, J., not participating.

NOTE.—Reported in 238 N. E. 2d 1.